BENTON, J.,
dissenting.
I would treat Thomas B. Gibson’s petition for writ of certiorari, addressed to the circuit court order denying the petition for writ of mandamus he filed seeking to require the Department of Corrections (DOC) to award proper credit against sentences he is serving, as a petition for writ of habeas corpus, see Fla. R.App. P. 9.040(a) & (c), and direct DOC to release him forthwith.[3] In my view, with proper credit awarded, he has now served all of his sentences in their entirety.
On January 27, 1994, he was sentenced for various third-degree felony offenses he had committed between May and September of 1993. Consulting a single guidelines scoresheet, the trial court sentenced him to five years’ incarceration on one third-degree felony (uttering forged bills) consecutive to five years’ incarceration on another such offense (uttering forged instrument), and ordered that, after serving these two sentences, he be placed on concurrent five-year terms of probation for each of the remaining uttering and forgery offenses (all third-degree felonies themselves). When the prison sentences expired, DOC released Mr. Gibson from incarceration in August of 1998.
Neither of the offenses for which he had been sentenced to prison was one for which conditional release was authorized. See § 947.1405(2), Fla. Stat. (1993). His release from prison was in part attributable to gain-time,[4] but both of these prison sentences expired on the day he reached the combined “maximum sentence expiration date.” See § 944.275(2)(a), Fla. Stat. (1993) (“The department shall establish for each prisoner sentenced to a term of years a ‘maximum sentence expiration date,’ which shall be the date when the sentence or combined sentences imposed on a prisoner will expire. In establishing this date, the department shall reduce the total time to be served by any time lawfully credited.”).
Upon his release from prison, he was on probation, not for the offenses for which he had served prison terms, but for the other third-degree felonies. On November 23, 1999, less than a year after his concurrent probationary terms for the other offenses had begun, the sentencing court revoked probation and imposed sentences for all the offenses for which he had been placed on probation (expressly declining to forfeit any gain-time). Upon revocation of probation, the trial court pronounced sentences aggregating seven year's’ incarceration, the least the guidelines authorized: Mr. Gibson was sentenced to three years’ incarcer *426 ation on each offense in one group, followed by four years’ incarceration on each of the remaining offenses. Within each group, the sentences ran concurrently with one another. He was not, of course, re-sentenced on either of the offenses for which he had already served prison terms that had expired.
In pronouncing sentence upon revocation of probation, the trial court allowed no credit for time already served on the first two offenses. See Tripp v. State, 622 So.2d 941, 942 (Fla.1993). Mr. Gibson therefore filed a motion to correct sentence seeking such credit. In Tripp, our supreme court had held:
The purpose of the sentencing guidelines is “to establish a uniform set of standards to guide the sentencing judge in the sentence decision-making process” so as to eliminate unwarranted variation in sentencing. Fla.R.Crim.P. 3.701(b). One guidelines scoresheet must be utilized for all offenses pending before the court for sentencing. Fla. R.Crim.P. 3.701(d)(1). A sentence must be imposed for each separate offense, but the total sentence cannot exceed the permitted range of the applicable guidelines scoresheet unless a written reason is given. Fla.R.Crim.P. 3.701(d)(12). Sentences imposed after revocation of probation must be within the recommended guidelines range and a one-cell bump. Fla.R.Crim.P. 3.701(d)(14).
[[Image here]]
[I]t appears that the sentencing method sanctioned by the district court of appeal is inconsistent with the intent of the sentencing guidelines. Under this method, trial judges can easily circumvent the guidelines by imposing the maximum incarcerative sentence for the primary offense and probation on the other counts. Then, upon violation of probation, the judge can impose a sentence which again meets the maximum incarcerative period. Without an award of credit for time served for the primary offense, the incarcerative period will exceed the range contemplated by the guidelines.
[[Image here]]
We hold that if a trial court imposes a term of probation on one offense consecutive to a sentence of incarceration on another offense, credit for time served on the first offense must be awarded on the sentence imposed after revocation of probation on the second offense.
Tripp, 622 So.2d at 942. Under Tripp, a “sentence must be imposed for each separate offense,” but on imposition of sentence after revocation of probation, credit for time served even on a separate offense must be given, if the separate offense is properly included on the same scoresheet. Id. Applying Tripp, the trial court entered an order granting Mr. Gibson’s motion for correction of sentence on August 2, 2000.
In the present case, “time served for the primary offense[s],” Tripp, 622 So.2d at 942, consisted of time in jail before the original sentencing,[5] and 1,660 days Mr. Gibson spent in prison. Adding this time to the time[6] he spent in jail after he was arrested for probation revocation prior to his post-revocation sentencing on November 23, 1999, yields a total of 1,897 days.[7] *427 Subtracting 1,897 from the aggregate seven years (2,555 days) imposed on November 28, 1999, leaves 658 days, the balance he should have been required to serve, assuming (contrary to fact) no gain-time. He finished serving the final 658-day installment of the aggregate seven years on September 11, 2001, and should have been released from custody no later than then.[8] (In fact, DOC awarded gain-time after the resentencing that by August 14, 2001, amounted to 172 days, and should have led to a still earlier release.)
In its response to order to show cause, DOC argues: “In short, due to the revocation of probation, Gibson must now serve the days he did not serve from the prior 10 year term due to the award of gain-time.” In other words, DOC argues[9] and the majority opinion holds that the revocation of petitioner’s probation requires that he serve ten years day for day, instead of the seven years the sentencing judge pronounced. DOC’s reliance on Eldridge v. Moore, 760 So.2d 888, 892 (Fla.2000) (holding “that upon resentencing in either a probationary split sentence or a true split sentence, regardless of whether the trial court resentenced the inmate to a lesser sentence, the Department’s statutory authority to forfeit ‘all gain time’ upon probation revocation should not be lessened”), in this regard is misplaced. Mr. Gibson received several sentences, but not one of them was “either a probationary split sentence or a true split sentence.” Eldridge, 760 So.2d at 892. He does not, moreover, seek any credit on an active sentence for gain-time.
Under Florida law, the sentencing court must impose a separate sentence for every crime, sentencing guidelines notwithstanding.[10] The statutes in effect forbid general *428 sentences. Specifically, section 775.021(4), Florida Statutes (1993), provides:
(a) Whoever, in the course of one criminal transaction or episode, commits an act or acts which constitute one or more separate criminal offenses, upon conviction and adjudication of guilt, shall be sentenced separately for each criminal offense; and the sentencing judge may order the sentences to be served concurrently or consecutively....
(b) The intent of the Legislature is to convict and sentence for each criminal offense committed in the course of one criminal episode or transaction....
(Emphasis supplied.) The criminal rules also eschew general sentences. “A sentence must be imposed for each offense.” Fla. R.Crim. P. 3.701(d)(12). The Department of Corrections had no authority to amalgamate the two sentences on which he was incarcerated with his other sentences to create a general sentence.
Imposition of a general sentence for multiple offenses is fundamental error. See Parks v. State, 765 So.2d 35, 35-36 (Fla.2000); Kissel v. State, 757 So.2d 631, 632 (Fla. 5th DCA 2000). “The evil of a general sentence ... inheres in the uncertainty that its inscrutability creates.” Dorfman v. State, 351 So.2d 954, 957 (Fla.1977). A general sentence for multiple offenses is improper. See Fasenmyer v. State, 457 So.2d 1361, 1366 (Fla.1984); Carroll v. State, 361 So.2d 144, 147 (Fla.1978); Dorfman, 351 So.2d at 956-57; Durant v. State, 763 So.2d 1157, 1158 (Fla. 4th DCA 2000); Cruz v. State, 674 So.2d 802, 802-03 (Fla. 3d DCA 1996); Valiente v. State, 605 So.2d 1294, 1294-95 (Fla. 3d DCA 1992); Lewis v. State, 567 So.2d 50, 51 (Fla. 5th DCA 1990); Brown v. State, 500 So.2d 649, 650-51 (Fla. 1st DCA 1986); Reichman v. State, 473 So.2d 1324, 1325 (Fla. 1st DCA 1985).
The majority opinion rests on a misreading of the opinion in Tripp. The decision in Cook v. State, 645 So.2d 436 (Fla.1994), does not go beyond the decision in Tripp; the opinion in Cook merely reiterates the Tripp rationale: “[Wjhere a defendant is sentenced to an inearcerative term on one offense, to be followed by a probationary period on another offense, credit for time served on the inearcerative term must be awarded on a sentence imposed after revocation of probation.” Cook, 645 So.2d at 437. The court held in Homer v. State, 617 So.2d 311, 312-313 (Fla.1993) that probationary portions of split sentences need not run concurrently, but does not suggest that prison sentences that have no probationary component can be revived, once the prison sentences have expired. No case before the present case converts the Tripp credit into a “Tripp penalty,” certainly not the decision in Larimore v. State, 823 So.2d 287, (Fla. 1st DCA 2000), where the court noted that “crediting the appellant with time served may have the effect of erasing the subsequent sentence for the probation violation because the subsequent sentence is less than the original inearcerative period.”
DOC has failed here, as it failed in Bolden v. Moore, 27 Fla. L. Weekly D1779, D1780, 2002 WL 1769446, — So.2d -, - (Fla. 1st DCA Aug.2, 2002) (“What the Department is essentially doing in this case is using the forfeited gain time from *429 the sentence that has the largest amount of accumulated gain time ... and attaching that larger amount of forfeited gain time onto the longest incarcerative sentences ... thereby causing Bolden’s overall sentence to exceed [the lawful limit]”), to treat separate sentences imposed for separate offenses separately. See also Westlund v. Fla. Parole Comm’n, 637 So.2d 52, 54 (Fla. 1st DCA 1994) (“These five sentences were to be served concurrently, but they nevertheless remain distinct sentences.”). While requiring that credit be given in certain circumstances for time served on a separate sentence, Tripp does not authorize forfeiture of gain-time on a separate sentence that has already expired.

. Where "there appears ground for issuance of a writ of habeas corpus,” a petition for another extraordinary writ is properly treated "alternatively as a petition for habeas corpus.” Lyden v. Wainwright, 307 So.2d 258, 259 (Fla. 2d DCA 1974). See Diggs v. Dep’t of Con., 503 So.2d 412, 413 (Fla. 1st DCA 1987) ("[W]e conclude that petitioner's sentence has expired, and we therefore grant the writ.”). See also Singletary v. Bronson, 764 So.2d 625 (Fla. 1st DCA 2000).

. According to DOC’s records, at the time of his release from incarceration, he had 21 days of jail credit, and 1,660 days of actual prison time served; and 1,969 days of gain-time had accrued, for a total of 3,650 days (10 years).

. The sheriffs certificate indicates 104 days. DOC suggests he may actually have spent 92 days in jail before the original sentencing.

. The sheriff's certificate indicates 133 days. DOC suggests he may actually have spent 145 days in jail after he was arrested for probation revocation prior to his post-revocation sentencing on November 23, 1999. Under either scenario, he spent 237 days in jail: 104 + 133 =237=92 + 145.

.The trial judge awarded 237 days' credit as to each count, which DOC represents it is bound to treat as shortening the combined *427 sentences by 474 days. If so bound, DOC should have released petitioner on or before January 17, 2001.

. Even without any credit for the time he spent in jail, Mr. Gibson’s sentences have all expired, if viewed individually, as required by statute, rule, and controlling precedent alike.

. DOC's reliance on the supreme court’s unexplained denial of the petition for writ of habeas corpus in Polk v. Singletary, 698 So.2d 1225 (Fla. 1997) (Table), is misplaced. It is frankly surprising that DOC would rely on the Polk decision as authority for continuing to hold Mr. Gibson. Polk was released on August 1, 1997, according to DOC records for Thomas Polk, DC No. 363911, see http://www.dc.state.fl.us /InmateReleases, and the most likely reason for the supreme court's denial of his habeas petition more than three weeks later (August 25, 1997) was its mootness by that time. As reported, the decision in Polk consists entirely of the following: "Disposition: Hab. Corp. den.” See Sumner v. Sumner, 707 So.2d 934, 935 (Fla. 2d DCA 1998) (holding denial of extraordinary writ not to be res judicata because denial was not explicitly with prejudice, and recognizing "the possibility of the inadvertent issuance of a silent denial which was not determined on its merits”); Fratello v. State, 496 So.2d 903, 911 (Fla. 4th DCA 1986); Bashlor v. Wainwright, 369 So.2d 695, 697 (Fla. 1st DCA 1978). See generally Parkway Bank v. Fort Myers Armature Works, Inc., 658 So.2d 646, 649 n. 3 (Fla. 2d DCA 1995) (noting "the practice of denying petitions which should be dismissed”).
DOC did not cite Singletary v. Bronson, 764 So.2d 625 (Fla. 1st DCA 2000) ("The petition for writ of certiorari is DENIED, and respondent is entitled to his immediate release.”), in which DOC relied on Polk in an unsuccessful effort to overturn a circuit court’s refusal to treat separate sentences as a single sentence even though they were pronounced simultaneously on the basis of a single scoresheet.

.The guidelines do nothing more than establish ranges of cumulative sentences that the trial court may impose, absent a departure. See Fla. R.Crim. P. 3.701(d)(12); Reichman v. State, 473 So.2d 1324, 1325 (Fla. 1st DCA 1985). See also Cauble v. State, 742 So.2d 422, 423 (Fla. 2d DCA 1999); Cruz v. State, 674 So.2d 802, 802 (Fla. 3d DCA 1996); Kelly v. State, 616 So.2d 100, 102 (Fla. 1st DCA 1993); Vileta v. State, 454 So.2d 792, *428 795 (Fla. 2d DCA 1984) ("[A] sentence must be imposed for each offense, but the total sentence cannot exceed the total guideline sentence ... unless the court should desire to deviate from the recommended range, whereupon it shall state in writing its reasons for doing so.”). How a trial court structures sentences to meet the guidelines range is up to the discretion of the trial court. The trial court may impose concurrent or consecutive sentences in order to effectuate the guidelines. See Cauble, 742 So.2d at 423.